**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kwen Brennan, | No. CV-18-01717-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| New 4125 LLC, et al., | |
| Defendants. | |

Defendants New 4125 LLC, 4125 LLC, and Cheetah Operations, LLC (collectively, the "Corporate Defendants") have filed a "motion to dismiss and alternative motion for more definite statement." (Doc. 47.) As explained below, the motion will be granted in part and denied in part.[1]

**BACKGROUND**

A.     The Complaint

The complaint in this case was filed on June 5, 2018. (Doc. 1.) In it, Kwen Brennan ("Plaintiff") alleges that she worked as an exotic dancer at "Scores Phoenix Gentlemen's Club" (hereinafter "Scores"), an adult entertainment club operated by Defendants, and that Defendants "refused to compensate her at the applicable minimum wage and overtime rate. In fact, Defendants refused to compensate Plaintiff whatsoever for any hours worked. Plaintiff's only compensation was in the form of tips from club patrons . . . [and] Plaintiff

---

[1]     The Corporate Defendants have requested oral argument, but the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

1    was required to divide her tips with Defendants and other employees who do not

2    customarily receive tips." (*Id.* ¶¶ 1, 31.)  The lawsuit is styled as a collective action under

3    the Fair Labor Standards Act ("FLSA"), with Plaintiff seeking to assert claims "on behalf

4    of all other similarly situated employees, current and former, of Defendants." (*Id.* ¶ 4.)

5         Notably, the complaint doesn't allege, with specificity, when Plaintiff actually

6    worked at Scores—it merely alleges that Plaintiff was "employed as an exotic dancer at

7    Defendants' adult entertainment club during the statutory time period." (*Id.* ¶ 33.)  Other

8    portions of the complaint indicate that "the statutory time period" is the three-year period

9    preceding the date on which the complaint was filed (*i.e.,* June 5, 2015 through June 5,

10   2018). (*Id.* ¶ 11, 65, 79.)

11        The complaint identifies four defendants.  The first three are the Corporate

12   Defendants, which are alleged to be the entities that own Scores, and the fourth is Michael

13   Taraska ("Taraska"), the alleged owner of Scores. (*Id.* ¶¶ 12-15, 27.)

14   B.   The Order Authorizing Service By Mail

15        On June 21, 2018, Plaintiff filed a motion for leave to use alternative service

16   methods. (Doc. 13.)  The motion was supported by an affidavit from a process server, who

17   stated that (1) he had attempted to personally serve the Corporate Defendants' registered

18   agent, but when he went to the agent's last known home address, he was told the agent

19   lived in Canada, (2) he made repeated attempts to serve Taraska at Scores but was unable

20   to do so, (3) following one of his unsuccessful service attempts at Scores, Taraska called

21   him on the telephone to say "they were not going to accept service and said 'just publish,'"

22   and (4) during this phone call, Taraska also said "that he was refusing service and used the

23   word 'Evade.'" (Doc. 13-1.)

24        Plaintiff also submitted a proposed order as an exhibit to the motion for alternative

25   service. (Doc. 13-2.)  The paragraph concerning the Corporate Defendants stated: "The

26   service to [the Corporate Defendants] may be completed and will be considered effective

27   service by sending the Summons, Original Complaint, and Doc. 6 [*i.e.,* the Court's MIDP

28   materials], through USPS Priority Mail, addressed to Defendants' registered agent Mr.

1  Peter Homenick, 4125 North Seventh Street, Phoenix, Arizona 85014." (*Id.*) The

2  paragraph concerning Taraska was nearly identical—it called for the same set of

3  documents to be mailed to the same address, with the only difference that the envelope be

4  addressed to Taraska instead of the registered agent. (*Id.*)

5      On August 20, 2018, the Court granted the motion for alternative service. (Doc.

6  19.) When doing so, the Court adopted the proposed order that Plaintiff had previously

7  submitted. (*Id.*)

8      On August 25, 2018, Plaintiff mailed the documents to the Corporate Defendants'

9  registered agent. (Doc. 21.) Around the same time, Plaintiff also apparently mailed the

10 documents to Taraska at the same mailing address (which was Scores's physical address).[2]

11 C.      The Default Judgment

12      On October 10, 2018, Plaintiff moved for a default judgment against the Corporate

13 Defendants because they'd failed to file an answer within 21 days of being served. (Doc.

14 22.)

15      On October 12, 2018, the Clerk of Court entered a default judgment against the

16 Corporate Defendants. (Doc. 25.)

17      On November 6, 2018, the Corporate Defendants filed a motion to set aside the

18 default judgment. (Doc. 34.) In it, they argued that Plaintiff's earlier service effort (*i.e.,*

19 mailing the complaint and summons to their registered agent on August 25, 2018) was

20 ineffective because the packet of materials didn't include the August 20, 2018 order

21 authorizing service by mail, as required by Arizona Rule of Civil Procedure 4.1(k)(2). (*Id.*

22 at 4-5.) The motion also asserted that "this is a sham class action lawsuit. [Plaintiff] never

23 worked for Score's [sic] and pointed, repeated[] requests to Plaintiff's counsel for proof

24 she did work there have been ignored." (*Id.* at 5.)

25      On November 20, 2018, Plaintiff filed an opposition. (Doc. 36.) In it, she argued

26 that (1) the previous service effort was effective because the Court's August 20, 2018 order

27

28  [2]    Although the docket does not contain any evidence of Plaintiff's alternative service upon Taraska, it is clear that Taraska received such service—he filed an answer to the complaint on September 17, 2018. (Doc. 20.)

only required her to mail the complaint, summons, and MIDP materials to the Corporate Defendants—it didn't go further and require a copy of the August 20, 2018 order to be included in the service packet—and (2) the Corporate Defendants had constructive knowledge of the lawsuit because Taraska forwarded the complaint to them after he was served.  (*Id.*)

D.     The Scheduling Conference And Re-Mailing Of The Documents

On February 4, 2019, the Court held the Rule 16 scheduling conference.  (Doc. 45.) Counsel for the Corporate Defendants was present.

At the beginning of the hearing, the Court heard argument concerning the motion to set aside the default judgment.  During this argument, the Court asked the Corporate Defendants' counsel: "[I]s it your position that . . . even though you are standing here in court right . . . now they need to go back and send this in the mail again with the order?" In response, the Corporate Defendants' counsel stated: "Yes. . . . ***But if you want to give them 30 days to serve us that's fine***."

Afterward, the Court orally granted the motion to set aside the default judgment, explaining that although "functionally this would be a lot easier if I could just order here that service has . . . effectively been done, . . . I think the safest course of action is to give the plaintiffs 30 days to . . . effectively serve the [Corporate Defendants] by mailing not just the complaint and summons but also the order, if that's what [Corporate Defendants' counsel] is going to require for service."  The Court later added: "It just seems like an absolute waste of the human spirit right now to require [Plaintiff] to remail everything with [the Corporate Defendants' counsel] sitting right here but I think that's required . . . . [T]he order authorizing substitute service is still valid if [Plaintiff] turn[s] around and just mail[s] the complaint and summons and MIDP documents but . . . also include[s] that order this time, [that] should be sufficient."

On February 5, 2019—the day after the hearing—Plaintiff mailed the complaint, summons, MIDP documents, and order authorizing service by mail to the Corporate Defendants.  (Doc. 47-1.)

**DISCUSSION**

A.    Motion To Dismiss For Lack Of Timely Service

      1.    **The Parties' Arguments**

In their motion, the Corporate Defendants seek dismissal under Rule 12(b)(5) on the ground that the complaint wasn't timely served.  (Doc. 47 at 2-5.)  They argue that Plaintiff's attempt to serve the complaint by mail on August 20, 2018 was invalid because the mailing didn't include a copy of the court order authorizing service by mail, that they repeatedly pointed out this deficiency to Plaintiff's counsel, and that "[i]nstead of cooperating with the Defendants and agreeing to set aside the default, the Plaintiff refused to budge.  Due to her intransigence, she now let the deadline for service expire without having undertaken any effort to have had it extended."  (*Id.* at 2-4.)  The Corporate Defendants further assert that "no order extending the time was granted" and that although Plaintiff may "argue the Court implicitly did so . . . counsel does not recall discussion on this point."  (*Id.* at 4-5.)

In her response, Plaintiff argues that (1) the Court specifically held, during the February 4, 2019 hearing, that she had another 30 days to complete service, and (2) even if the Court hadn't already granted a 30-day extension of time to complete service, dismissal would be inappropriate because the Corporate Defendants had actual notice of the complaint, the Corporate Defendants haven't suffered any hardship from the delay, Plaintiff had a "justifiable excuse" (*i.e.,* reliance on the wording of the August 20, 2018 order, which didn't require a copy of the order to be mailed to the Corporate Defendants) for believing her mailing of August 25, 2018 was sufficient, and Plaintiff would suffer severe prejudice from a dismissal.  (Doc. 48 at 3-12.)

In their reply, the Corporate Defendants argue that, during the February 4, 2019 hearing, "[n]o order was entered extending the date for service; the only order was one requiring proper service to be effected."  (Doc. 51 at 2.)  The Corporate Defendants further argue that, "[w]hile it is true that Michael Taraska was aware of the Complaint against himself and the Corporate Defendants," Plaintiff should still be required to suffer some

1   consequences because "[a]ny prejudice is due to her own conduct" and "[l]ong-entrenched

2   maxims bar a party from complaining about situations they themselves created." (*Id.* at 2-

3   6.)

4           2.      **Analysis**

5           The Corporate Defendants' motion to dismiss under Rule 12(b)(5) will be denied.

6   During the February 4, 2019 hearing, the Court specifically held that Plaintiff should have

7   another 30 days to serve the complaint. Indeed, it was the Corporate Defendants who

8   suggested this in the first place: "[I]f you want to give them 30 days to serve us that's fine."

9   The Court is at a loss to understand how the Corporate Defendants could have left that

10  hearing under the impression that subsequent service by Plaintiff, completed within 30

11  days of the hearing, could still be considered untimely.

12          The Court also rejects the Corporate Defendants' attempt to portray themselves as

13  aggrieved and blameless victims here. The reason why Plaintiff was forced to resort to

14  service by mail in the first place was because the Corporate Defendants' statutory agent

15  doesn't live in the United States and because the Corporate Defendants' general manager

16  brazenly told Plaintiff's process server that he intended to evade service. It thus rings

17  hollow for the Corporate Defendants to now complain about Plaintiff's purported "refus[al]

18  to extend any courtesies or to show good faith." (Doc. 51 at 5.)

19          Finally, to the extent the Corporate Defendants are implicitly seeking

20  reconsideration of the Court's decision during the February 4, 2019 hearing to grant

21  Plaintiff another 30 days to complete service, that request is denied. Not only did the

22  Corporate Defendants state during the hearing that such an extension was permissible, but

23  the extension was appropriately granted because Plaintiff's earlier service failures can be

24  chalked up to excusable neglect. *See generally Lemoge v. United States*, 587 F.3d 1188,

25  1198 (9th Cir. 2009) ("Rule 4(m) provides two avenues for relief. The first is mandatory:

26  the district court must extend time for service upon a showing of good cause. The second

27  is discretionary: if good cause is not established, the district court may extend time for

28  service upon a showing of excusable neglect.").

Whether neglect is "excusable" is a flexible standard, "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).[3] At a minimum, courts assessing whether neglect is "excusable" must consider four factors: "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

Here, the first factor (prejudice to non-movant) favors Plaintiff. The Corporate Defendants have suffered no cognizable form of prejudice from the service delay. *Lemoge*, 587 F.3d at 1196 ("The [non-movant] does not indicate how it would have changed its strategy . . . or that a different strategy would have benefitted [it]."). The only prejudice the Corporate Defendants can claim is the loss of a "quick but unmerited victory, the loss of which [the courts] do not consider prejudicial." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th Cir. 2010); *see also M.D. by and through Doe v. Newport-Mesa Unified Sch. Dist.*, 840 F.3d 640, 643 (9th Cir. 2016) (same).

The second factor (length of delay) is neutral. "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Lemoge,* 587 F.3d at 1196. Here, the complaint should have been served by September 3, 2018 (*i.e.,* 90 days from when the complaint was filed) and wasn't properly served until February 5, 2019. This was a delay of about five months. Although five months is not an insignificant delay, it must be noted that the Corporate Defendants had actual notice of the lawsuit throughout this period. *Cf. Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) ("In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar, prejudice to the

---

[3] Although *Pioneer* addressed the meaning of the phrase "excusable neglect" as it appears in Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, the Ninth Circuit subsequently confirmed that the *Pioneer* test applies in other contexts. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381-82 (9th Cir. 1997).

1  defendant, *actual notice of a lawsuit*, and *eventual service*.") (citations and internal

2  quotation marks omitted, emphases added).

3  The third factor (reason for the delay) favors Plaintiff. The Court's August 20, 2018

4  order stated that Plaintiff could serve the Corporate Defendants by mailing them a copy of

5  the complaint and summons. (Doc. 19.) On August 25, 2018, Plaintiff did just that. It

6  turns out that the August 20, 2018 order was wrong—under Arizona law, a party seeking

7  to complete service by mail also must include a copy of the court order authorizing such

8  service. Nevertheless, it was reasonable under the circumstances for Plaintiff to mistakenly

9  believe its August 25, 2018 service effort was sufficient—relying on a court order is not

10  egregious neglect.

11  The final factor (good faith) also tips in Plaintiff's favor. Although Plaintiff

12  certainly bears some of the blame for allowing the service issues in this case to snowball

13  into their current posture—the Court's erroneous August 20, 2018 order was based on a

14  proposed order that Plaintiff provided, and Plaintiff could have easily re-served the

15  Corporate Defendants after being told by Taraska that the earlier service efforts were

16  deficient—the Court finds that the Corporate Defendants are not operating with clean

17  hands and have exacerbated the situation here.

18  B.  Alternative Request For Relief

19  1.  **The Parties' Arguments**

20  As an alternative to dismissal under Rule 12(b)(5) based on untimely service, the

21  Corporate Defendants ask the Court to dismiss the complaint under Rule 12(b)(6) or order

22  Plaintiff to provide a more definite statement under Rule 12(e). (Doc. 47 at 11-12.)

23  Specifically, the Corporate Defendants argue the complaint is deficient because "[i]t does

24  not allege any facts about [Plaintiff's] alleged work, such as dates, her stage name, or the

25  name of who hired her and supervised her." (Doc. 47 at 5.) The Corporate Defendants

26  further assert that, despite a diligent search, they haven't located any records indicating

27  Plaintiff ever worked for them. (*Id.* at 6.) Citing *Landers v. Quality Comm., Inc.*, 771 F.3d

28  638 (9th Cir. 2014), the Corporate Defendants argue that an FLSA plaintiff must "allege[e]

the week or weeks the Plaintiff claims to have not been properly paid." (*Id.* at 8.) Thus, the Corporate Defendants ask the Court to rule that, "to comply with the dictates of Rules 1, 8, and 12(e)," Plaintiff should be required to allege (1) her stage name, (2) the dates she worked for them, (3) whether she has copies of documentation showing she worked for them, (4) her roles while working for them, (5) the ID number of her erotic entertainer's license, as well as the date of issuance, and (6) the identity of her supervisors. (*Id.* at 10-11.)

In her opposition, Plaintiff argues the six categories of information sought by the Corporate Defendants are items that are typically sought and exchanged during the discovery process and need not be alleged in the complaint. (Doc. 48 at 12-13.) Nevertheless, she includes, as attachments to her brief, (1) an affidavit stating she "worked as an exotic dancer for Scores from approximately December 2017-April 2018. Some of the dates I worked as a dancer was on December 8, 2017, January 1, 2018, January 2, 2018, January 10, 2018 and April 15, 2018" (*see* Doc. 49-2 ¶ 3) and (2) screenshots of text-message exchanges in which one of the Corporate Defendants' employees asked her "When are you coming back??" and whether she could work on a particular day (*see* Doc. 50).

In their reply, the Corporate Defendants argue the text messages undercut Plaintiff's FLSA claim because they suggest "she set her time when she would work, and she would work only on occasion, when it suited her," and thus prove she was properly classified as an independent contractor. (Doc. 51 at 6-9.) Accordingly, they "urge the Court to waive its 'one summary judgment motion' procedural rule, and allow them to immediately file a Motion for Summary Judgment on the issue whether the Plaintiff is an employee under the FLSA." (*Id.* at 10.)

2. **Analysis**

The Corporate Defendants initially argued, with great hue and cry, that the complaint should be dismissed because Plaintiff never even worked for them. (*See, e.g.,* Doc. 47 at 10 ["The Defendants should not be compelled to deny the allegations and incur

staggering legal costs when facing volumes of discovery on the oft [sic] chance the Plaintiff actually did work at Scores as a dancer."].)  In her response, Plaintiff provided an affidavit and text messages that strongly suggest she did, in fact, work for them.

Nevertheless, the affidavit and text messages don't completely resolve all of the issues raised in the Corporate Defendants' motion.  For example, the motion includes a citation to *Landers*, a recent Ninth Circuit case addressing the pleading standards applicable in the FLSA context, but Plaintiff's response doesn't mention *Landers*.  This omission is problematic.  In *Landers*, the Ninth Circuit upheld the dismissal of an FLSA complaint because it offered only "generalized allegations asserting violations of the minimum wage and overtime provisions of the FLSA by the defendants" and "did not allege facts showing that there was a given week in which [the plaintiff] was entitled to but denied minimum wages or overtime wages."  771 F.3d at 645-46.  The court elaborated: "Notably absent from the allegations in Landers's complaint . . . was any detail regarding a given workweek when Landers worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages.  Although plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages."  *Id.* at 646.

The complaint in this case suffers from the same defect.  It merely alleges that Plaintiff worked for the Corporate Defendants at some unspecified point during the three-year period between June 2015 and June 2018 and doesn't identify a particular workweek in which an FLSA violation is alleged to have occurred.  Moreover, the affidavit Plaintiff filed as an exhibit to her opposition brief still doesn't provide the level of detail required by *Landers*—it only identifies five particular dates, over a five-month period, on which Plaintiff claims to have worked and doesn't say how many hours she worked each day.

Contrary to the parties' arguments, this is not a defect that can be cured under Rule 12(e) by requiring Plaintiff to provide a more definite statement.  Rule 12(e) motions "are

viewed with disfavor and are rarely granted." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). "The purpose of Rule 12(e) is to provide relief from a pleading that is unintelligible, not one that is merely lacking detail." *U.S. E.E.O.C. v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. 2012). Here, the Corporate Defendants aren't asserting the complaint is unintelligible or convoluted—they argue it lacks key details. The proper mechanism for asserting such a claim is a motion to dismiss under Rule 12(b)(6), not a motion for a more definite statement under Rule 12(e). *See generally* Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 12, at 312-13 (2018) ("Rule 12(e) . . . is not to be used to force plaintiffs to plead their facts in detail . . . . If a complaint satisfies the applicable pleading requirement and is not so vague and convoluted to be unintelligible, then the goals of pleading have been met . . . .").

For these reasons, the Court concludes the complaint is subject to dismissal under Rule 12(b)(6) for failure to state a claim. The dismissal will be without prejudice because Plaintiff may be able to cure the *Landers* deficiency by alleging additional facts. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012) ("Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency.").

Before concluding, the Court will offer two further observations. First, as the Corporate Defendants correctly note in their reply, the text messages between Plaintiff and the Scores employee suggest, at least at first blush, that Plaintiff had autonomy over her hours and schedule. Such autonomy is often the hallmark of an independent-contractor relationship. *Cf. Tijerino v. Stetson Desert Project LLC*, 2017 WL 9511247, \*4 (D. Ariz. 2017) (concluding that exotic dancer was properly classified as an independent contractor, and that request for conditional FLSA certification would thus be denied, in part because "dancers are free to appear or not appear at the Club whenever and for however long they desire"). Thus, any amended complaint should include specific factual allegations that support Plaintiff's contention she was an employee.

Second, the Court is troubled by the fact that Plaintiff didn't provide the text

1    messages to the Corporate Defendants during the MIDP process and only (grudgingly)

2    provided those materials as an attachment to the opposition to the motion to dismiss.

3    Plaintiff's argument that such documents are only subject to production in response to "a

4    request for production or interrogatory . . . during the discovery process" (Doc. 48 at 12)

5    is incorrect.  The District of Arizona's MIDP program "requires the parties to exchange

6    certain categories of preliminary court-ordered discovery" at the outset of the case and "is

7    designed to accelerate the exchange of relevant information that would otherwise be

8    produced later in the litigation through traditional discovery requests."  *Fed. Trade*

9    *Comm'n v. Hite Media Grp.*, 2018 WL 4676158, *2 (D. Ariz. 2018).  Among other things,

10   the MIDP requires the parties to identify all "documents" that "may be relevant to any

11   party's claims and defenses" and to produce those documents alongside their initial MIDP

12   response (or make them available on that date).  *See* D. Ariz. Gen. Order 17-08 ¶ B(3).

13   Also, electronically stored information ("ESI") that may be relevant to any party's claims

14   and defenses ordinarily must be produced within 40 days of serving the initial MIDP

15   response.  *Id.* ¶ C(2)(c).  Here, Plaintiff certified that she provided her initial MIDP

16   response to all defendants on October 17, 2018.  (Doc. 29.)  It's unclear why the text

17   messages weren't provided at that time (or within 40 days of that date).  The MIDP program

18   requires the automatic production of key documents and ESI at the outset of the case.  Thus,

19   to the extent Plaintiff has documents or ESI that support (or undermine) her claim that she

20   was an employee of the Corporate Defendants who wasn't paid a minimum wage or

21   overtime, those materials should have been produced months ago.

22                                                    * * *

23        Accordingly, **IT IS ORDERED** that:

24        (1)     The Corporate Defendants' motion to dismiss and alternative motion for

25   more definite statement (Doc. 47) is **granted in part and denied in part**;

26        (2)     The complaint (Doc. 1) is **dismissed without prejudice**; and

27        …

28        …

1      (3)    Plaintiff shall have 30 days from today's date to file an amended complaint.

2  Plaintiff is advised that failure to file an amended complaint will result in the dismissal of

3  this proceeding with prejudice.

4          Dated this 12th day of March, 2019.

5

6

7  _____
                          Dominic W. Lanza
8                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28