**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kwen Brennan, et al., | No. CV-18-01717-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| New 4125 LLC, et al., | |
| Defendants. | |

Now pending before the Court are (1) Plaintiff Kwen Brennan's ("Plaintiff") Motion for Leave to File a First Amended Complaint (Doc. 54) and (2) Defendants' Motion to Strike (Doc. 59). Both motions are fully briefed and nobody has requested oral argument. As explained below, Plaintiff's motion will be granted and Defendants' motion will be denied.

## BACKGROUND

A. <u>The Initial Complaint</u>

The initial complaint in this case was filed on June 5, 2018. (Doc. 1.) In it, Plaintiff alleges that she worked as an exotic dancer at "Scores Phoenix Gentlemen's Club" (hereinafter "Scores"), an adult entertainment club operated by Defendants,[1] that Defendants "refused to compensate her at the applicable minimum wage and overtime

---

[1] The initial complaint identifies four defendants. The first three are corporate entities—New 4125 LLC, 4125 LLC, and Cheetah Operations, LLC (collectively, the "Corporate Defendants")—and the fourth is Michael Taraska ("Taraska"), the alleged owner of Scores. (*Id.* ¶¶ 12-15, 27.)

rate," and that "[i]n fact, Defendants refused to compensate Plaintiff whatsoever for any hours worked," such that her "only compensation was in the form of tips from club patrons," which she "was required to divide . . . with Defendants and other employees who do not customarily receive tips." (*Id.* ¶¶ 1, 31.) The complaint is styled as a collective action under the Fair Labor Standards Act ("FLSA"), with Plaintiff seeking to assert claims "on behalf of all other similarly situated employees, current and former, of Defendants." (*Id.* ¶ 4.)

Notably, this complaint doesn't allege, with specificity, when Plaintiff actually worked at Scores—it merely alleges that Plaintiff was "employed as an exotic dancer at Defendants' adult entertainment club during the statutory time period." (*Id.* ¶ 33.) Other portions of the complaint indicate that "the statutory time period" is the three-year period preceding the date on which the complaint was filed (*i.e.,* June 5, 2015 through June 5, 2018). (*Id.* ¶ 11, 65, 79.)

B. The Dismissal Order

On March 13, 2019, the Court issued an order ("the Order") dismissing the complaint with leave to amend. (Doc. 52.) Although the Order rejected several of Defendants' other objections to the complaint, it concluded the complaint was deficient under *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014), because "[i]t merely alleges that Plaintiff worked for the Corporate Defendants at some unspecified point during the three-year period between June 2015 and June 2018 and doesn't identify a particular workweek in which an FLSA violation is alleged to have occurred. Moreover, the affidavit Plaintiff filed as an exhibit to her opposition brief still doesn't provide the level of detail required by *Landers*—it only identifies five particular dates, over a five-month period, on which Plaintiff claims to have worked and doesn't say how many hours she worked each day." (Doc. 52 at 10.)

The Order also specified that "[t]he dismissal will be without prejudice because Plaintiff may be able to cure the *Landers* deficiency by alleging additional facts." (*Id.* at 11.) Thus, the Order authorized Plaintiff to file an amended complaint within 30 days

1 without the need to seek further leave of the Court. (*Id.* at 13 ["Plaintiff shall have 30 days from today's date to file an amended complaint."].) Finally, the Order also recommended that the amended complaint "include specific factual allegations that support Plaintiff's contention she was an employee." (*Id.*)

C. <u>Plaintiff's April 4, 2019 Filing</u>

On April 4, 2019, Plaintiff filed a "Motion for Leave to File First Amended Complaint." (Doc. 54.) The motion asserts that Plaintiff "believes she has the right to amend based on [the Court's March 13, 2019 Order at Doc. 52] granting Plaintiff 30 days to file an amended complaint but is filing this Motion for Leave as a precautionary motion." (*Id.* at 1.) The motion later clarifies that "Plaintiff intends to amend the complaint per the Court's order" and additionally seeks to add a new named Plaintiff, Shayla Maynard, to Plaintiff's complaint. (*Id.* at 2.) Pursuant to LRCiv 15.1(a), Plaintiff attached, as an exhibit to her motion, a copy of the proposed amended complaint, which indicates how it differs from the original complaint by striking through omitted text and underlining proposed new text (*i.e.,* "redlining" it). (Doc. 54-1.) The proposed amended complaint includes newly-named plaintiff Maynard. (*Id.*)

D. <u>Plaintiff's April 11, 2019 Filing</u>

On April 11, 2019, Plaintiff filed a different redlined amended complaint, with an explanation that this amended complaint was filed "pursuant to the Court Order issued on March 13, 2019." (Doc. 56 at 2.) This amended complaint did not add Maynard as a plaintiff. Plaintiff further explained that because the April 11, 2019 amended complaint—for which leave to amend had already been granted—became the First Amended Complaint ("FAC") upon being filed, and because she still wanted the Court to consider her motion for leave to amend to add a newly-named plaintiff (Doc. 54), the title of that previously-filed motion for leave to amend should be changed to read "Plaintiff's Motion for Leave to File a **Second** Amended Complaint." (Doc. 56 at 2.)

The FAC filed on April 11, 2019 differs from the original complaint in three significant respects. First, the FAC eliminates any allegation that Defendants failed to pay

*overtime* wages in violation of the FLSA, such that the only theory of recovery in the FAC is that Defendants failed to comply with the FLSA's *minimum* wage requirements. (*See, e.g.,* Doc. 56 at 2 [redlines show that overtime-related allegations have been stricken].)

Second, the FAC contains more information about the dates on which Plaintiff alleges she worked at Scores. (Doc. 56 ¶¶ 42-46.) Specifically, the FAC alleges that Plaintiff "worked at Scores from approximately December 2017 until April 2018," "worked 8 to 12 hours per shift," "worked 3-5 shifts per week," and "never received minimum wage" during this period. (*Id.*) Paragraph 46 also contains 10 subparagraphs that identify particular dates between December 2017 and April 2018 on which Plaintiff worked at Scores but wasn't paid the minimum wage. (*Id.*)

Third, the FAC contains new factual allegations concerning the level of control that Defendants exerted over the dancers who worked at Scores. (*See, e.g.,* Doc. 56 ¶ 58.) These new allegations were presumably offered to address the Order's recommendation that the amended complaint "include specific factual allegations that support Plaintiff's contention she was an employee." (Doc. 52 at 11.)

**ANALYSIS**

A.   The Motion To Strike

The Court will address the pending motions in reverse chronological order. In their motion to strike (Doc. 59), the Corporate Defendants argue the FAC appearing at Doc. 56 should be stricken under Rule 12(f) because it is "hopelessly confusing," represents an attempt by Plaintiff to engage in "bad faith game playing," is "not in the proper format [because] it includes the stricken allegations with lines through them," and is redundant in light of Plaintiff's separate motion to file a new iteration of the complaint.

In her response (Doc. 61), Plaintiff argues (1) the FAC is properly formatted, as Local Rule 15.1 requires the changes to be denoted in redlines, (2) she didn't need to seek leave of the Court before filing the FAC because it was expressly authorized by the Order, and (3) the FAC isn't redundant, and thus isn't subject to being stricken under Rule 12(f), because it only includes allegations concerning a single plaintiff (Brennan), whereas the

other version of the complaint she wishes to file would include a co-plaintiff (Maynard).

In their reply (Doc. 64), the Corporate Defendants argue that Plaintiff failed to comply with Local Rule 15.1 when filing the FAC because "the proper procedure is to lodge a 'redlined' version of the proposed pleading and then, if it is granted, to file the proposed pleading without the redline." (*Id.* at 1.) The Corporate Defendants also argue, for the first time, that the FAC should be stricken because "it is replete with improper legal argument that goes well beyond merely framing the case." (*Id.* at 2.)

The motion to strike will be denied. The Order authorized Plaintiff to file an amended complaint within 30 days and instructed Plaintiff to include, in the amended complaint, more detailed allegations concerning when she worked at Scores and why she should be considered an employee. The FAC supplies those new allegations. The Corporate Defendants' contention that Plaintiff was required by Local Rule 15.1(a) to file a motion seeking permission to file the FAC, instead of simply filing it, is incorrect—such permission was already supplied by the Order.[2]

As for the Corporate Defendants' assertion that Plaintiff made things unnecessarily "confusing," the Court tends to agree. Plaintiff filed a mis-titled "Motion for Leave to File First Amended Complaint" (Doc. 54), which Plaintiff has now clarified "should be titled 'Plaintiff's Motion for Leave to File a Second Amended Complaint'" (Doc. 56 at 2), one week before filing the FAC. This turn of events was regrettable and confusing. Had the

---

[2] As for the formatting issue, it is true that the operative complaint should not be a redlined version. LRCiv 15.1 provides guidance to litigants who are amending pleadings in three situations: (1) amendment by motion, (2) amendment as a matter of course pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, and (3) amendment with the opposing party's written consent. In each case, a "clean" version, not a redlined version, becomes the operative complaint. The local rule does not specifically address how a litigant should proceed when the amendment is pursuant to a court order granting leave to amend. The Court concludes that the best way to proceed when a party has already been granted leave to amend is by adhering to the procedure outlined in LRCiv 15.1(b)—that is, by filing a clean version of the amended pleading, and then filing a separate notice of filing with a redlined version of the amended pleading attached as an exhibit to the notice. This would be an easy fix here. The Court could simply order Plaintiff to file a clean version of the FAC. However, because the Court will grant Plaintiff's motion to file a second amended complaint ("SAC"), the importance of having a clean version of the FAC on the docket is diminished, and having it filed later in time than the SAC would further muddy the docket and exacerbate the confusion regarding these pleadings.

FAC been filed first, the Corporate Defendants likely would not have filed the motion to strike and a round of briefing could have been avoided.

Nevertheless, the Court disagrees that Plaintiff was somehow trying to gain a tactical advantage through "game playing." Plaintiff had nothing to gain by filing the FAC and the motion for leave to file a SAC in an illogical order. At any rate, the FAC represents a permissible, timely-filed effort to cure the deficiencies identified in the Order and it serves a legitimate purpose (*i.e.,* ensuring that if the Court denied the motion for leave to amend to add a new plaintiff, an operative complaint would remain on the docket).

Finally, the Court will not address the Corporate Defendants' argument concerning whether the FAC contains "improper legal argument" because it was raised for the first time in their reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").[3]

B. <u>The Motion for Leave To File a Second Amended Complaint</u>

The key differences between the proposed SAC (Doc. 55) and the FAC (Doc. 56) are that that (1) the SAC seeks to add another former Scores dancer, Maynmiard, as a co-plaintiff, and (2) the SAC seeks to assert both overtime and minimum-wage claims (whereas the FAC, as discussed above, only asserts minimum-wage claims).

In her motion (Doc. 54), Plaintiff contends leave should be granted because (1) Rule 15(a) creates a liberal policy in favor of amendment, (2) Defendants won't be prejudiced by the new allegations because "no new federal or state claims are raised by the Plaintiff" and the "nature of the new named plaintiff's claims mirror the current Plaintiff's claims," (3) it is permissible under the FLSA to proceed with two co-plaintiffs, each of whom has party status, and (4) the amendment request wasn't dilatory.

In their opposition (Doc. 57), the Corporate Defendants argue leave to amend should

---

[3] Defendant Taraksa filed a joinder in support of the Corporate Defendants' motion to strike. (Doc. 60.) In his joinder, Taraska argues the allegations concerning Maynard are "at best false, and some – literally impossible." (*Id.* at 4.) However, the FAC doesn't even mention Maynard—the only allegations concerning her appear in Plaintiff's proposed SAC. Thus, Taraska's joinder doesn't support the Corporate Defendants' request to strike the FAC.

be denied because the SAC (1) was filed in violation of the Order, (2) "adds a brand new co-plaintiff," (3) "is replete with improper legal argument," and (4) "cites insufficient facts to establish a *prima facie* case of an employment relationship." (*Id.* at 1.)

Plaintiff's motion will be granted, albeit with some reservations. The Court's analysis is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which provides that the Court "should freely give leave [to amend pleadings] when justice so requires." The Ninth Circuit has further specified that "this policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Thus, leave to amend should be denied only if the proposed amendment would prejudice the opposing party, is sought in bad faith, would unduly delay the litigation, or is futile. *Amerisource Bergen Corp. v. Dialysis W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1397 (9th Cir. 1990).

On the one hand, the Corporate Defendants haven't established that any of these concerns are present here. First, the leave request wasn't filed in contravention of the Court's March 13, 2019 order. The Order merely set forth the steps Plaintiff needed to take to cure the pleading deficiencies as to Brennan. It didn't foreclose Plaintiff from seeking leave to amend to add a co-plaintiff. Second, there is nothing improper, futile, or unfairly prejudicial about naming a co-plaintiff in an FLSA case. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) ("The FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.' Under the FLSA, an opt-in plaintiff's action is deemed 'commenced' from the date her opt-in form is filed with the district court. From that point on, there is no statutory distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs.") (citations omitted). Third, although the SAC may contain a fair amount of legal argument masquerading as factual allegation, the Corporate Defendants haven't identified any authority suggesting the presence of such material constitutes a reason to deny leave to amend under Rule 15. Additionally, the presence of this material can be explained, in part, by the Court's recommendation in its previous order that Plaintiff beef up her allegations concerning the

working conditions at Scores.  Fourth, although the Court recognizes that one of the key issues to be decided in this case will be whether dancers at Scores should be categorized as employees or independent contractors (an issue addressed in *Tijerino v. Stetson Desert Project LLC*, 2017 WL 9511247 (D. Ariz. 2017)), the Court is not prepared to conclude at this juncture that the allegations in the SAC are futile as a matter of law to establish an employment relationship.

On the other hand, the Court has a concern that wasn't raised in any of the parties' briefs.  In the FAC, Plaintiff withdrew Brennan's overtime claim and asserted only a minimum-wage claim.  This was presumably because Brennan can't identify any particular week in which she worked more than 40 hours at Scores (and, thus, can't satisfy *Landers*'s pleading standard).  Yet the SAC seems to revert back to the allegation contained in the original complaint that Defendants are being sued under both overtime *and* minimum-wage theories.  (Doc. 55 ¶ 2 ["Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wages owed to them individually and on behalf of all other similarly situated employees, current and former, of Defendants."].)  Indeed, Count I of the SAC is entitled "Violation of the Fair Labor Standards Act, Failure to Pay Overtime."  (*Id.* at 17.)  Although the SAC contains allegations that Maynard worked more than 40 hours during certain weeks and was improperly denied overtime (*id.* ¶¶ 52, 54), it contains no such allegations concerning Brennan (*id.* ¶¶ 43-46).  Thus, it's unclear to the Court how Brennan could possibly serve as a co-lead plaintiff in this collective action. *Campbell*, 903 F.3d at 1110-11 ("[B]eing 'similarly situated' is the key condition for proceeding in a collective, and thus the issue on which a grant or denial of decertification generally depends.") (citing 29 U.S.C. § 216(b)).[4]

---

[4] The very first paragraph of the SAC alleges that Defendants "required and/or permitted Kwen Brennan and Shayla Maynard (hereinafter 'Plaintiffs') to work as *an* exotic dancer at its adult entertainment club in excess of forty hours per week, but refused to compensate *her* at the applicable minimum wage and overtime rates." (Doc. 55 ¶ 1, emphases added.)  These grammatical errors suggest Plaintiff may have simply taken the first paragraph from the initial iteration of the complaint (which, as noted, the Court dismissed as deficient under *Landers*), added Maynard's name to the first paragraph, and then forgotten to adjust the rest of the sentence to reflect the presence of two plaintiffs, not one.  This does not create confidence that Plaintiff has carefully fully considered the mismatch between Brennan's and Maynard's theories of liability.

In the final analysis, the policy of "extreme liberality" in favor of amendment under Rule 15(a) persuades the Court to grant Plaintiff's pending motion to amend despite these concerns. Any issues concerning the mismatch between Brennan and Maynard may be addressed during later stages of the case.

Accordingly, **IT IS ORDERED** that:

(1) The Corporate Defendants' motion to strike (Doc. 59) is **denied**;

(2) Plaintiff's "Motion for Leave to File First Amended Complaint" (Doc. 54), which is actually a motion for leave to file a second amended complaint, is **granted**;

(3) Plaintiff must, consistent with LRCiv 15.1(a), file and serve the SAC (Doc. 55) within **14 days** of this Order.

Dated this 10th day of May, 2019.

Dominic W. Lanza
United States District Judge