1  Gabriel A. Assaad (Admitted *pro hac vice*)
2  gassaad@kennedyhodges.com
   KENNEDY HODGES, LLP
3  4409 Montrose Blvd., Ste. 200
   Houston, TX 77006
4  Texas State Bar No. 24076189
5  Telephone: (713) 523-0001
   Facsimile: (713) 523-1116
6
7  **LEAD ATTORNEY IN CHARGE FOR**
   **PLAINTIFF AND CLASS MEMBERS**
8
9
10
11
12              IN THE UNITED STATES DISTRICT COURT
13               FOR THE DISTRICT OF ARIZONA
14  Kwen Brennan and Shayla Maynard,        )
    Individually and on behalf of all others )  Case No.  2:18-cv-01717-PHX-DWL
15  similarly situated,                      )
                                             )  **PLAINTIFF'S SECOND AMENDED**
16                                           )  **COLLECTIVE AND CLASS ACTION**
                                             )  **COMPLAINT**
17  v.                                       )
                                             )
18  New 4125 LLC d/b/a                       )
    Score Phoenix; 4125 LLC; Cheetah         )
19  Operations, LLC; and Michael Taraska,    )
    Individually,                            )
20                                           )
                                             )
21          Defendants.                      )
                                             )
22                                           )
                                             )
23  _____ )

24       Plaintiffs Kwen Brennan and Shayla Maynard, on behalf of herself and on behalf of

25  all others similarly situated, allege as follows:

26                     **I.    SUMMARY**

27       1.    New 4125 LLC d/b/a Scores Phoenix, 4125 LLC, Cheetah Operations, LLC,

28  and Michael Taraska, individually, (hereinafter "Defendants") required and/or permitted

Kwen Brennan and Shayla Maynard (hereinafter "Plaintiffs") to work as an exotic dancer at its adult entertainment club in excess of forty hours per week, but refused to compensate her at the applicable minimum wage and overtime rates.  In fact, Defendants refused to compensate Plaintiffs whatsoever for any hours worked.  Plaintiffs' only compensation was in the form of tips from club patrons.  Moreover, Plaintiffs were required to divide her tips with Defendants and other employees who do not customarily receive tips. Defendants misclassifies dancers as independent contractors.  Therefore, Defendants have failed to compensate Plaintiffs at the federally-mandated minimum wage rate.

Defendants' conduct violates the Fair Labor Standards Act ("FLSA") minimum wage provision, by failing to pay tipped employees pursuant to 29 U.S.C. § 203(m).  *See* 29 U.S.C. § 206.

2.     Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wages owed to them individually and on behalf of all other similarly situated employees, current and former, of Defendants. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

3.     Additionally, Defendants' failure to compensate Plaintiffs and all other non-exempt employees at a rate equal to or in excess of Arizona's required minimum wage violates the Arizona Wage Act, ARIZ. REV. STAT. ANN. § 23-350, *et seq*., and the Arizona Minimum Wage Act, ARIZ. REV. STAT. ANN. § 23-363, *et seq*.  Plaintiffs, therefore, bring a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Arizona wage laws.  Members of the Rule 23 Class Action are hereinafter referred to as the "Arizona Class Members."

## II.     SUBJECT MATTER JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.     This Court also has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1367 because such claims do not raise novel or complex

2

issues of state law, and because those claims derive from a common nucleus of operative facts from which the FLSA claims stated herein derive.

6.     Venue is proper in the District of Arizona because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants operate an adult entertainment club that is located in this District.

### III.     PARTIES AND PERSONAL JURISDICTION

8.     Plaintiff Kwen Brennan is an individual residing in Maricopa County, Arizona.  Her consent to this action is attached hereto as Exhibit A.

9.     Plaintiff Shayla Maynard is an individual residing in Maricopa County, Arizona. Her consent to this action is attached hereto as Exhibit B.

10.     Putative opt-in Plaintiffs are current or former exotic dancers who have worked at Defendants' adult entertainment club within the applicable limitations period and have filed a valid consent to join this suit with the Court.

11.     The FLSA Class Members and Arizona Class Members are all current and former exotic dancers who worked at Defendants' adult entertainment club at any time starting three years before this Complaint was filed, up to the present.

12.     NEW 4125 LLC, is a domestic for-profit company doing business in Phoenix, Arizona.  This Defendant may be served with process by serving its registered agent: Peter Homenick, 4125 North 7th Street, Phoenix, Arizona 85014.

13.     4125 LLC is a domestic for-profit company doing business in Phoenix, Arizona. This Defendant may be served with process by serving its registered agent: Peter Homenick, 4125 North 7th Street, Phoenix, Arizona 85014.

14.     CHEETAH OPERATIONS, LLC is a domestic for-profit company doing business in Phoenix, Arizona. This Defendant may be served with process by serving its registered agent: Peter D. Homenick, 4125 North 7th Street, Phoenix, Arizona 85014.

15.     Defendant MICHAEL TARASKA is an individual who resides in Arizona. He is a member owner of the corporate Defendants. He may be served with process

individually at his usual place of business and Defendants' corporate office: 4125 North 7th Street, Phoenix, Arizona 85014.

16.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privileges of conducting activities in the State of Arizona and established minimum contacts sufficient to confer jurisdiction over said Defendants, and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

17.     Defendants have and continue to have systematic contacts with the State of Arizona sufficient to establish general jurisdiction over them. Specifically, Defendants conduct and/or conducted business in Arizona by operating a club in Phoenix, Arizona. Defendants also employ workers and contract with residents and business in Arizona.

18.     This cause of action arose from or relates to the contacts of Defendants with Arizona residents, thereby conferring specific jurisdiction over Defendants.

## IV.     FLSA COVERAGE

18.     The Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

19.     The statutory definition of "employer" is interpreted broadly and includes corporate officers, participating shareholders, supervisors, managers, or other employees when that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation. *See, e.g.*, *id.*; *Boucher v. Shaw*, 572 F.3d 1087, 1090–91 (9th Cir. 2009); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (5th Cir. 1984).

20.     At all material times, Defendants have been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

21.     At all material times, Defendants have been employers within the meaning of ARIZ. REV. STAT. ANN. § 23-350(3) and ARIZ. REV. STAT. ANN. § 23-362(B).

22.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

23.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

24.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).  That is, Defendants perform related activities through unified operation and common control for a common business purpose.  *See Brennan v. Arnheim and Neely, Inc*., 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

25.     At all material times, Plaintiffs and FLSA Class Members were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

26.     At all material times, Plaintiffs and the Arizona Class Members were employees of Defendants within the meaning of ARIZ. REV. STAT. ANN. § 23-350(2) and ARIZ. REV. STAT. ANN. § 23-362(A).

27.     The Ninth Circuit adopted a four-factor test to evaluate the total employment situation between parties and whether an employee-employer relationship exists. *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *disapproved of by Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528 (1985). While the economic realities of the work relationship is evaluated, particular focus is on: whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id.*

28.     Defendant Michael Taraska is a member owner and general manager of the corporate Defendants d/b/a Scores Phoenix. Defendant Taraska is involved in the day-to-day business operations of the corporate Defendants. As the general manager of Scores

Phoenix, Defendant Taraska employed the Plaintiff, FLSA Class Members, and Arizona Class Members as employees who danced for and entertained customers.

29.     Defendants had the authority to hire and fire employees.

30.     Defendants had the authority to direct and supervise work of the employees.

31.     Defendants determined employee compensation rates and method of payment.

32.     Defendants had the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding capital expenditures.

33.     Defendants maintained personnel records for Plaintiffs and Class Members including their stage names and contact information.

34.     Defendants controlled the nature, pay structure, and employment relationship of Plaintiff, FLSA Class Members, and Arizona Class Members.

35.     As such, pursuant to 29 U.S.C. § 203(d), ARIZ. REV. STAT. ANN. §23-350(3) and ARIZ. REV. STATE. ANN. § 23-362(B), Defendants acted directly or indirectly in the interest of Plaintiff's, FLSA Class Members', and Arizona Class Members' employment as their employer, which makes him individually liable under the FLSA and Arizona State Law.

36.     Finally, the Ninth Circuit analyzes whether a worker is an independent contractor under the FLSA. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). These factors include: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Id.*

37.     Neither the presence nor absence of any individual factor is determinative. Whether an employer-employee relationship exists depends "upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947). Ultimately, it depends on whether, as a matter of economic reality, the individuals "are dependent upon the business to which they render service." *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947).

38.     Plaintiffs and Class members fall within the coverage of the FLSA as employees of Defendants because those economic reality factors weigh against a finding of independent contractor status in favor of their employee status based on the facts described herein.

## V.     FACTS

39.     Defendants operate an adult entertainment club in Phoenix, Arizona under the name of "Scores Phoenix Gentlemen's Club."

40.     Defendants employ exotic dancers.

41.     Plaintiffs were previously employed as an exotic dancer at Defendants' adult entertainment club during the statutory time period.

42.     Plaintiffs worked on a regular basis for Defendants' gentlemen establishment located in Phoenix, Arizona.

43.     Plaintiff Kwen Brennan worked at Scores from approximately December 2017 until April 2018.

44.     Plaintiff Kwen Brennan worked between 8 to 12 hours per shift.

45.     Plaintiff Kwen Brennan worked 3-5 shifts per week.

46.     Plaintiff Kwen Brennan never received minimum wage from December 2017 through April 2018. For example:

   a.  Plaintiff Kwen Brennan worked December 8, 2017 and did not receive minimum wage.

   b.  Plaintiff Kwen Brennan worked the week of December 4, 2017 – December

10, 2017 and did not receive minimum wage.

    c. Plaintiff Kwen Brennan worked January 1, 2018 and did not receive minimum wage.

    d. Plaintiff Kwen Brennan worked January 2, 2018 and did not receive minimum wage.

    e. Plaintiff Kwen Brennan worked the week of January 1, 2018 – January 7, 2018 and did not receive minimum wage.

    f. Plaintiff Kwen Brennan worked January 9, 2018 and did not receive minimum wage.

    g. Plaintiff Kwen Brennan worked January 10, 2018 and did not receive minimum wage.

    h. Plaintiff Kwen Brennan worked the week of January 8, 2018- January 14, 2018 and did not receive minimum wage.

    i. Plaintiff Kwen Brennan worked April 15, 2018 and did not receive minimum wage.

    j. Plaintiff Kwen Brennan worked the week of April 16, 2018-April 22, 2018 and did not receive minimum wage.

47.    Plaintiff Shayla Maynard worked exclusively and consistently at Scored from approximately March 2017 until June 2018.

48.    Plaintiff Shayla Maynard worked between 8 to 12 hours per shift during the week, and 14 hours per shift on weekends.

49.    Plaintiff Shayla Maynard typically worked 40-64 hours per week.

50.    Plaintiff Shayla Maynard typically worked 4-6 shifts per week.

51.    Plaintiff Shayla Maynard typically worked almost every weekend from March 2017 until June 2018.

52.    Anytime Plaintiff Shayla Maynard worked 4 or more shifts, she worked overtime.

53.    Plaintiff Shayla Maynard never received minimum wage from March 2017

through June 2018. For example:

    a.  Plaintiff Shayla Maynard worked the week of April 3, 2017-April 9, 2017 and did not receive minimum wage.

    b.  Plaintiff Shayla Maynard worked the week of May 1, 2017-May 7, 2017 and did not receive minimum wage.

    c.  Plaintiff Shayla Maynard worked the week of June 5, 2017-June 11, 2017 and did not receive minimum wage.

    d.  Plaintiff Shayla Maynard worked the week of July 10, 2017-July 16, 2017 and did not receive minimum wage.

54.    Plaintiff Shayla Maynard never received overtime pay from March 2017 through June 2018. For example:

    a.  Plaintiff Shayla Maynard worked over 40 hours the week of April 3, 2017-April 9, 2017 and did not receive overtime pay.

    b.  Plaintiff Shayla Maynard worked over 40 hours the week of May 1, 2017-May 7, 2017 and did not receive overtime pay.

    c.  Plaintiff Shayla Maynard worked over 40 hours the week of June 5, 2017-June 11, 2017 and did not receive over time pay.

    d.  Plaintiff Shayla Maynard worked over 40 hours the week of July 10, 2017-July 16, 2017 and did not receive overtime pay.

55.    Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at its establishment

56.    Defendants require dancers to abide by a variety of written and unwritten rules, and Defendants enforced these rules by levying fines against entertainers who violated the rules.

57.    For example, Defendants charged Plaintiffs a "house fee" per shift worked. Defendants also required Plaintiffs to share their tips with other non-service employees who do not customarily receive tips, including the disc jockeys and the bouncers.

58.    Defendants encourage their customers to tip dancers using "Dance Dollars" rather than cash.  Under this system, customers purchase Dance Dollars from the club using their credit cards.  Customers then redeem the Dance Dollars for dances with Plaintiffs and putative Class Members.  When Plaintiffs, FLSA Class Members, and Arizona Class Members turn in the certificates to the clubs for cash, Defendants do not return the full value to them, but instead retain a portion of the tips. Further, Defendants would not allow dancers to redeem their Dance Dollars until 3 days later, unless dancers agreed to give the club a portion of their Dance Dollars received.  This resulted in Defendants taking a portion of the tips that should have been paid to the dancers.  This portion grossly exceeds the fee paid by the club as a merchant fee to the credit card companies.

59.    Plaintiffs, FLSA Class Members, and Arizona Class Members received tips and/or dance fees from Defendants' customers.

60.    The tips and/or dance fees received by Plaintiffs, FLSA Class Members, and Arizona Class Members were not included in Defendants' gross sales receipts.

61.    Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour.  Defendants also violated 29 U.S.C. § 203(m) when they failed to notify the Plaintiff about the tip credit allowance (including the amount to be credited) before the credit was utilized.  That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were.  Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of her tips and instead required that they divide their tips amongst other employees who do not customarily and regularly receive tips.  Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

62.    Furthermore, Defendants are in violation of Arizona's tipped-employee compensation provision, ARIZ. REV. STAT. ANN. § 23-363(C), which provides that "the employer may pay a wage up to $3.00 per hour less than the minimum wage if the employer can establish . . . that for each week, when adding tips received to wages paid, the employee

received not less than the minimum wage for all hours worked." Defendants failed to compensate Plaintiff with wages for any hours worked in violation of the Arizona Minimum Wage Act.

63.     Defendants illegally classified the dancers as independent contractors. However, at all times, Plaintiffs, FLSA Class Members, and Arizona Class Members were employees of Defendants.

64.     Defendants hired/fired, issued pay, supervised, directed, disciplined, scheduled and performed all other duties generally associated with that of an employer with regard to the dancers.

65.     In addition, Defendants instructed the dancers about when, where, and how they were to perform their work.

66.     The following further demonstrates the dancers' status as employees:

a.     Defendants require dancers to complete an employee application as a prerequisite to their employment;

b.      Plaintiffs and other similarly situated dancers are not allowed by law to operate as independent businesses but can only work for licensed strip clubs.

c.     Defendants require applicants to lift their shirt prior to being hired, so Defendants can perform a body check and examine dancers' stomach.

d.     Defendants have the sole right to hire and fire the dancers;

e.     Defendants supervise the dancers;

f.     Defendants require dancers utilize a time clock system to track and monitor the time worked in the club;

g.     Defendants require dancers to work a minimum of 4 hours a day;

h.     Defendants require dancers to pay house fees even if they did not make enough money to cover the house fee.

i.     Defendants terminated dancers if they did not pay house fees.

j.     Defendants instruct dancers to work on designated "mandatory" nights;

k.     Defendants made the decision not to pay wages or overtime;

l.     Defendants exercise sole control over how much a dancer can charge a third party customer;

m.     Defendants charge a rental room fee and require dancers pay the club $5 per song when dancing in the VIP room.

n.     Defendants have a manager waiting outside the VIP room to collect money for the number of songs dancer danced and to collect a tip from dancers.

o.     Defendants require dancers to dance completely topless.

p.     Defendants require dancers to "tip out" or share her tips with the disk jockey ("DJ"), bouncer, and manager thus decreasing the amount of compensation dancers keep and earn;

q.     Defendants require dancers to tip out managers approximately 10% of their daily compensation.

r.     Defendants invest heavily in their enterprise and establishment by providing the dancers with music equipment and a performing stage;

s.     Defendants require that dancers purchase their uniforms;

t.     Defendants demand dancers wear a high heel type of shoe or else prohibit the dancers from performing;

u.     Dancers must perform stage dances when called upon to do so by the DJ, pursuant to a rotation system controlled by the DJ.

v.     Dancers did not have the right to ignore a call to perform on stage, unless dancer paid a skip fee to the DJ.

w.     Dancers make no financial investment with Defendants' business;

x.     Defendants provide all capital investments for the business.

y.      Dancers are not responsible for paying any facility expenses relating to the operation of the club;

z.      Defendants maintain exclusive control over major determinants of customer volume such as marketing, advertising, business hours, facility maintenance, aesthetics, beverage inventory, and setting the cover charge price;

aa.     Dancers have no control over the key determinants of profit and loss.

bb.     The club requires no prior experience, formal dance training or certification to perform.

cc.     Defendants apply fines/fees to the dancers if they fail to follow Defendants' guidelines or directions;

dd.     Defendants implement a practice of charging dancers a "house fee" to work at the club that increases depending on how late in the day the dancer comes to perform; and

ee.     Dancers are integral to the business of Defendants without whom, patrons would have virtually no reason to enter the Defendants' establishment and enable to club to stay in business.

67.     Defendants misclassified Plaintiffs, FLSA Class Members, and Arizona Class Members as independent contractors to avoid Defendants' obligation to pay them pursuant to the FLSA.

68.     Plaintiffs are not exempt from the overtime and minimum wage requirements under the FLSA.

69.     Plaintiffs and FLSA Class Members are required to and do in fact frequently work more than forty hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty per workweek.  In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of the FLSA. *See* 29 U.S.C. § 206.

70.    Defendants' method of paying Plaintiffs and Class Members in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA.  Defendants misclassified Plaintiffs and Class Members with the sole intent to avoid paying them in accordance to the FLSA. There are multiple federal court opinions finding that this method of compensation is in violation of the FLSA, and therefore, Defendants' conduct is willful.

71.    Courts have routinely held that held that exotic dancers are in fact employees for purposes of the FLSA. The Court of Appeals for the Fourth and Fifth Circuits have affirmed district court rulings that exotic dancers are employees under the FLSA. *See McFeely v. Jackson St. Entm't LLC*, 825 F. 3d 235 (4th Cir. 2016); *Reich v. Circle C. Invs. Ltd.*, 998 F. 2d 324, 329 (5th Cir. 1993).

Additionally, twenty-one district courts have held exotic dancers are employees under the FLSA.[1]

72.    Defendants' method of paying Plaintiffs and the Arizona Class Members was in violation of the Arizona Minimum Wage Act and Arizona Wage Law and was willful

---

[1] *Pizzarelli v. Cadillac Lounge, L.L.C.*, No. CV 15-254 WES, 2018 WL 2971114 (D.R.I. Apr. 13, 2018); *Miller v. Centerfold Entm't Club, Inc.*, No. 6:14-CV-6074, 2017 WL 3425887 (W.D. Ark. Aug. 9, 2017); *Shaw v. Set Enterprises, Inc.*, 241 F. Supp. 3d 1318 (S.D. Fla. 2017); *Lester v. Agment LLC*, No. 1:15 CV 886, 2016 WL 1588654 (N.D. Ohio Apr. 20, 2016); *Vaughan v. M-Entm't Properties, LLC*, No. 1:14-CV-914-SCJ, 2016 WL 7365201 (N.D. Ga. Mar. 15, 2016); *Foster v. Gold & Silver Private Club, Inc.*, No. 7:14CV00698, 2015 WL 8489998 (W.D. Va. Dec. 9, 2015); *Gardner v. Country Club, Inc.*, No. 4:13-CV-03399-BHH, 2015 WL 7783556 (D.S.C. Dec. 3, 2015); *Degidio v. Crazy Horse Saloon & Rest., Inc.*, No. 4:13-CV-02136-BHH, 2015 WL 5834280 (D.S.C. Sept. 30, 2015); *Mason v. Fantasy, LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327 (D. Colo. July 27, 2015); *Verma v. 3001 Castor, Inc.*, No. CIV. A. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Whitworth v. French Quarter Partners, LLC*, No. 6:13-CV-6003, 2014 WL 12594213 (W.D. Ark. June 30, 2014); *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); *Butler v. PP & G, Inc.*, No. CIV. A. WMN-13-430, 2013 WL 596447 (D. Md. Nov. 7, 2013); *Thornton v. Crazy Horse, Inc.*, 2012 WL 2175753 (D.Alaska June 14, 2012); *Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *Thompson v. Linda and A. Inc.*, 779 F.Supp.2d 139 (D.D.C.2011); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Morse .v Mer Corp.*, No. 1:08-CV-1389-WTL-JMS, 2010 WL 2346334 (S.D. Ind. June 4, 2010); *Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343 (M.D.Fla. 1997); *Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D.Tex. 1995); *Martin v. Priba Corp.*, No. CIV.A.3:91-CV-2786-G, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992).

and not based on a good faith and reasonable belief that its conduct complied with Arizona Law.

73.     The Alaska Supreme Court and Oregon Court of Appeals have also held exotic dancers are employees under state wage laws that incorporate the FLSA's economic realities test. *See State ex rel. Roberts v. Bomareto Enterprises, Inc.*, 153 Or. App. 183, 188, 956 P.2d 254, 256 (1998); and *Jeffcoat v. Alaska Dep't of Labor*, 732 P.2d 1073 (Alaska 1987).

74.     The Nevada Supreme Court reversed a trial court's summary judgment in favor of a club and ordered it on remand to enter summary judgment in favor of the dancers under a state wage law that incorporates the FLSA's economic realities test. *See Terry v. Sapphire Gentlemen's Club*, 130 Nev. 879, 336 P.3d 951 (2014).

75.     Further, Defendants failed to keep adequate records of Plaintiff's and FLSA Class Members' work hours and pay in violation of section 211(c) of the Fair Labor Standards Act. *See* 29 U.S.C. § 211(c).

76.     Federal law mandates that an employer is required to keep for three years all payroll records and other records containing, among other things, the following information:

    a.  The time of day and day of week on which the employees' work week begins;

    b.  The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

    c.  An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    d.  The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

    e.  The hours worked each workday and total hours worked each workweek;

f.  The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.  The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.  The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.  The dates, amounts, and nature of the items which make up the total additions and deductions;

j.  The total wages paid each pay period; and

k.  The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

77.   Defendants have not complied with federal law and have failed to maintain such records with respect to the Plaintiffs and FLSA Class Members.   Because Defendants' records are inaccurate and/or inadequate, Plaintiff and FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, Anderson v. Mt. Clemens Pottery Co.*¸ 328 U.S. 680, 687 (1946).

78.   Lastly, this Court points to *Tijerino v. Stetson Desert Project LLC*, as reliance that exotic dancers were properly classified as independent contractors. It is important to note that this case is on appeal to the Ninth Circuit and set for oral argument July 2019.

## VI.   EQUITABLE TOLLING

79.   The doctrine of equitable tolling preserves a plaintiffs' full claim when a strict application of the statute of limitations would be inequitable.   *See Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760–61 (9th Cir. 1981), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

80. Equitable tolling is proper when an employer has engaged in misleading conduct. Defendants intentionally misled Plaintiffs and Class Members into believing that Defendants were not required to pay them minimum wage and/or overtime for hours worked in excess of forty hours per workweek. Defendants coerced the Plaintiffs, FLSA Class Members, and Arizona Class Members into believing that they were independent contractors. Additionally, Defendants failed to place the necessary and required Department of Labor posters which inform workers of their rights. Consequently, Plaintiffs, FLSA Class Members, and Arizona Class Members were victims of fraud and unable to ascertain any violation taking place.

81. Thus, the statute of limitations for the Plaintiffs, FLSA Class Members, and Arizona Class Members should be equitably tolled due to Defendants' fraudulent concealment of the Plaintiffs', FLSA Class Members' and Arizona Class Members' rights. Plaintiffs therefore seek to have the limitations period extended from the first date that Defendants used this covert payroll practice up to the time each Plaintiff joins this lawsuit.

## VII.   CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

### FAILURE TO PAY OVERTIME

### (COLLECTIVE ACTION)

82. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

83. Defendants' practice of failing to pay Plaintiffs and FLSA Class Members time-and-a-half rate for hours in excess of forty per workweek violates the FLSA. 29 U.S.C. § 207. In fact, Defendants do not compensate them whatsoever for any hours worked.

84. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to the Defendants or Plaintiffs.

## COUNT II

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

### FAILURE TO PAY THE MINIMUM WAGE

### (COLLECTIVE ACTION)

85.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

86.    Defendants' practice of failing to pay Plaintiffs and FLSA Class Members at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206.  In fact, Defendants do not compensate them whatsoever for any hours worked and have violated the tip credit provision under the FLSA as described above.

87.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiffs.

## COUNT III

### VIOLATION OF ARIZONA MINIMUM WAGE ACT

### FAILURE TO PAY MINIMUM WAGE

### (CLASS ACTION)

88.    Plaintiffs and Arizona Class Members incorporate all allegations contained in the foregoing paragraphs.

89.    Defendants' practice of willfully failing to pay Plaintiffs and Arizona Class Members wages at the rate of the Arizona Minimum Wage violates the Arizona Minimum Wage Act. ARIZ. REV. STAT. ANN. § 23-363(A), (C).   In fact, Defendants do not compensate them whatsoever for any hours worked and have violated the tipped-employee compensation provision under Arizona law as described above.

## COUNT III

### VIOLATION OF ARIZONA WAGE LAW

### FAILURE TO PAY WAGES DUE

### (CLASS ACTION)

90.    Plaintiffs and Arizona Class Members incorporate all allegations contained in

the foregoing paragraphs.

91.    Defendants' practice of willfully failing to pay Plaintiffs and Arizona Class Members wages for labor performed violates Arizona Wage Law. ARIZ. REV. STAT. ANN. § 23-351(C).   In fact, Defendants do not compensate them whatsoever for any hours worked.

## VIII.   COLLECTIVE ACTION ALLEGATIONS

**A.    FLSA Class Members**

92.    Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers at any time during the three years prior to the commencement of this action to present.

93.    Plaintiffs have actual knowledge that FLSA Class Members have also been denied overtime pay for hours worked over forty hours per workweek and have been denied pay at the federally mandated minimum wage rate.   That is, Plaintiffs worked with other dancers who worked at Scores.   As such, Plaintiffs have first-hand personal knowledge of the same pay violations at Scores for other dancers.   Furthermore, other exotic dancers at Defendants' establishment have shared with Plaintiffs similar pay violation experiences as those described in this complaint.

94.    Other employees similarly situated to the Plaintiffs work or have worked for Defendants' gentlemen's club business, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

95.    Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty.   Defendants have denied them full compensation at the federally mandated minimum wage rate.

96.    FLSA Class Members perform or have performed the same or similar work as Plaintiffs.

97.    FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.

98.    FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

99.    As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

100.   Defendants' failure to pay overtime compensation Plaintiffs and Class Members and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

101.   The experiences of Plaintiffs, with respect to her pay, are typical of the experiences of the FLSA Class Members.

102.    The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

103.   All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

104.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

105.   Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula.  The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

106.   As such, Plaintiff bring their FLSA overtime and minimum wage claims as a collective action on behalf of the following class:

> **The FLSA Class Members are all of Defendants' current and former exotic dancers who worked for Defendants at any time starting <u>three years before this lawsuit was filed</u> up to the present.**

## B.   Arizona Class Action

107.   Plaintiffs and the Arizona Class Members incorporate all preceding paragraphs as though fully set forth herein.

108.   Plaintiffs brings her Arizona wage claims as a Rule 23 class action on behalf of the following class:

> **The Arizona Class Members are all of Defendants' current and former exotic dancers who worked for Defendants at any time starting three years before this lawsuit was filed up to the present.**

109.   <u>Numerosity</u>.  The number of members in the Arizona Class is believed to be over forty.  This volume makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the Arizona Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Arizona Class will be determined from Defendants' records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Arizona Class and Defendants.

110.   <u>Typicality</u>.  Plaintiffs' claims are typical of the Arizona Class because like the members of the Arizona Class, Plaintiffs were subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the Arizona Class. Defendants failed to pay non-exempt employees who worked at Scores overtime wages for all of their overtime hours worked.  All members of the Arizona Class worked substantially more than eight hours in a day and forty hours in a workweek.  Plaintiffs and the Arizona

Class were not paid minimum wage for all of their hours worked.  Plaintiffs and the Arizona Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law.

111.    _Adequacy_.  Plaintiffs are a representative party who will fairly and adequately protect the interests of the Arizona Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law.  Plaintiffs have retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Arizona Class they seek to represent.

112.    _Commonality_.  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

      a.   Whether Plaintiff and the Arizona Class worked more than forty hours in a workweek;

      b.   Whether Defendants failed to pay Plaintiff and the Arizona Class overtime wages for all hours worked over forty hours in a workweek; and

      c.   Whether Defendants failed to pay Plaintiff and Arizona Class the minimum wage for all hours worked.

113.    The common issues of law include, but are not limited to:

      a.   Whether Defendants improperly classified Plaintiffs and the Arizona Class as independent contractors;

      b.   Whether Plaintiffs and the Arizona Class are entitled to compensatory damages;

      c.   The proper measure of damages sustained by Plaintiff and the Arizona Class; and

      d.   Whether Defendants' actions were "willful."

114.    _Superiority_.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Arizona Class could afford to pursue individual litigation against a company the size of Defendants, doing

so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Arizona Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

115.   A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identity of members of the Arizona Class is readily identifiable from Defendants' records.

116.   This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on the Defendants to prove it properly compensated its employees; and (3) the burden is on the Defendants to accurately record hours worked by employees.

117.   Ultimately, a class action is a superior forum to resolve the Arizona claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiffs and the Arizona Class according to applicable Arizona laws.

118.   Nature of notice to be proposed.  As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e*. "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona class by mail, electronic mail, print, broadcast, internet and/or multimedia publication.

## IX.   <u>DAMAGES SOUGHT</u>

119.     Plaintiffs, FLSA Class Members, and Arizona Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated minimum wage rate.

120.     Additionally, Plaintiff, FLSA Class Members, and Arizona Class Members are entitled to recover their unpaid overtime compensation.

121.     Plaintiffs, FLSA Class Members, and Arizona Class Members are also entitled to all of the misappropriated funds.

122.     Plaintiffs and FLSA Class Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

123.     Plaintiffs and FLSA Class Members are entitled to recover their attorney's fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

124.     Plaintiffs and Arizona Class Members are entitled to an amount equal to wages owed, interest thereon, and an additional amount equal to twice the underpaid wages.  ARIZ. REV. STAT. ANN. § 23-364(G).

125.     Plaintiffs and Arizona Class Members are entitled to treble the amount of wages unpaid under Arizona Wage Law. ARIZ. REV. STAT. ANN. § 23-355(A).

126.     As the District of Arizona has previously concluded, the treble damages provision set forth in ARIZ. REV. STAT. ANN. § 23-355(A) may be applied to treble a liquidated damages award received under the FLSA pursuant to this Court's supplemental jurisdiction. *Davis v. Jobs for Progress*, 427 F. Supp. 479, 483 (D. Ariz. 1976).

127.     Plaintiffs and Arizona Class Members are entitled to recover attorney's fees and costs under ARIZ. REV. STAT. ANN. §§ 12-341, 12-341.01, 23-364(G).

## <u>PRAYER FOR RELIEF</u>

128.     For these reasons, Plaintiffs, FLSA Class Members, and Arizona Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a.  Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

b.  All unpaid wages at the FLSA mandated minimum wage rate;

c.  All misappropriated funds;

d.  An equal amount of all owed wages as liquidated damages as allowed under the FLSA;

e.  An amount equal to wages owed, interest thereon, and an additional amount equal to twice the underpaid wages pursuant to ARIZ. REV. STAT. ANN. § 23-364(G);

f.  An amount equal to treble the amount of wages unpaid under Arizona Wage Law and liquidated damages pursuant to ARIZ. REV. STAT. ANN. § 23-355(A);

g.  Prejudgment and post-judgment interest on unpaid back wages pursuant to the FLSA and/or ARIZ. REV. STAT. ANN. § 23-364(G);

h.  Tolling of the statute of limitations;

i.  Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA and ARIZ. REV. STAT. ANN. §§ 12-341, 12-341.01, 23-364(G);

j.  In the event Defendants fail to satisfy any judgment for Plaintiff with respect to the Arizona wage claims, an award that Defendants shall pay Plaintiff an amount which is treble the amount of the outstanding judgment with interest thereon at the then legal rate in accordance with ARIZ. REV. STAT. ANN. § 23-360; and

k.  Such other and further relief to which Plaintiffs and Class Members may be entitled, at law or in equity.

1    Dated May 15, 2019.

2

3                                                    **KENNEDY HODGES, L.L.P.**

4                                                    /s/ Gabriel A. Assaad

5                                                    Gabriel A. Assaad
                                                     (Admitted *pro hac vice*)
6                                                    gassaad@kennedyhodges.com
                                                     Texas Bar No. 24076189
7                                                    4409 Montrose Blvd., Ste. 200
8                                                    Houston, TX 77006
                                                     Telephone: (713) 523-0001
9                                                    Facsimile: (713) 523-1116

10

11                                                   **Lead Attorney in Charge for Plaintiff
                                                     and Class Members**

12

13

14   OF COUNSEL:
     Samantha J. Rodriguez
15   (Admitted pro *hac vice*)
     Texas Bar No. 24078031
16   srodriguez@kennedyhodges.com
     KENNEDY HODGES, LLP
17   4409 Montrose Blvd., Ste. 200
     Houston, Texas 77006
18   Telephone: (713) 523-0001
     Facsimile: (713) 523-1116
19

20

21                           <u>**CERTIFICATE OF SERVICE**</u>

22          This is to certify that on May 15, 2019 a copy of the foregoing instrument was served

23   upon all parties via the Court's electronic case filing system. Further a copy of this

24   document is being served via priority mail and electronic mail to Defendant Michael

25   Taraska at 4125 North Seventh Street, Phoenix, AZ 85014 and taraska@gmail.com.

26

27                                                    /s/ Gabriel A. Assaad
                                                      Gabriel A. Assaad
28

                                              26